Argued and submitted August 11, 2009, reversed and remanded with instructions
to reinstate citation October 6, 2010

## OREGON OCCUPATIONAL SAFETY
## & HEALTH DIVISION,
*Petitioner,*

*v.*

## DAVID A. MOWAT & ML MOWAT COMPANY,
*Respondent.*

Workers' Compensation Board
SH05524; A137455

240 P3d 748

Denis M. Vannier, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

The Oregon Occupational Safety and Health Division (OR-OSHA) seeks review of an order of an administrative law judge (ALJ) that vacated a citation against an employer, Mowat,[1] on the ground that OR-OSHA had failed to prove that Mowat's violation of a safety rule had created a hazard for Mowat's employees. On review of the ALJ's order for legal error, we reverse and remand.

OR-OSHA does not challenge the ALJ's findings, which establish the facts for our review. On July 26, 2005, OR-OSHA safety compliance officer Marcum visited Mowat's bridge construction work site in Milwaukie, Oregon. During Marcum's inspection, he saw that the slope of portions of an excavation at the work site appeared to violate Option (1) of 29 CFR § 1926.652(b),[2] which specifies the maximum angle of the slope of an excavation based on the type of soil. Option (1) is one of four sloping and benching system options in the rule from which employers are permitted to choose in conducting excavations.[3]

---

[1] OR-OSHA issued the citation to David A. Mowat & ML Mowat Company. For convenience, we refer to the employer as Mowat.

[2] 29 CFR § 1926.652 is among the federal rules that OR-OSHA has adopted as Oregon workplace safety rules. *See* OAR 437-003-0001(16)(c).

[3] We quote and discuss Option (4) in the text. The other options are:

"(1) *Option (1)—Allowable configurations and slopes.*

"(i) Excavations shall be sloped at an angle not steeper than one and one-half horizontal to one vertical (34 degrees measured from the horizontal), unless the employer uses one of the other options listed below.

"(ii) Slopes specified in paragraph (b)(1)(i) of this section, shall be excavated to form configurations that are in accordance with the slopes shown for Type C soil in Appendix B to this subpart.

"(2) *Option (2)—Determination of slopes and configurations using Appendices A and B.* Maximum allowable slopes, and allowable configurations for sloping and benching systems, shall be determined in accordance with the conditions and requirements set forth in Appendices A and B to this subpart.

"(3) *Option (3)—Designs using other tabulated data.*

"(i) Designs of sloping or benching systems shall be selected from and be in accordance with tabulated data, such as tables and charts.

"(ii) The tabulated data shall be in written form and shall include all of the following:

"(A) Identification of the parameters that affect the selection of a sloping or benching systems drawn from such data;

Option (4) in the rule provides:

"(4) *Option (4)—Design by a registered professional engineer.*

"(i) Sloping and benching systems not utilizing Option (1) or Option (2) or Option (3) under paragraph (b) of this section shall be approved by a registered professional engineer.

"(ii) Designs shall be in written form and shall include at least the following:

"(A) The magnitude of the slopes that were determined to be safe for the particular project;

"(B) The configurations that were determined to be safe for the particular project; and

"(C) The identity of the registered professional engineer approving the design.

"(iii) At least one copy of the design shall be maintained at the jobsite while the slope is being constructed. After that time the design need not be at the jobsite, but a copy shall be made available to the Secretary [of Labor] upon request."

29 CFR § 1926.652(b)(4) (italics in original). During his inspection, Marcum met with Mowat engineer Lindell and reviewed Lindell's documents for the excavation. Marcum concluded that Lindell's documents did not satisfy the requirements of Option (4) and, thus, that Mowat had violated 29 CFR § 1926.652 because it had not met the requirements of any of the options under the rule. Accordingly, Marcum recommended that OR-OSHA issue a citation to Mowat for the violation, which OR-OSHA subsequently did.

---

"(B) Identification of the limits of use of the data, to include the magnitude and configuration of slopes determined to be safe;

"(C) Explanatory information as may be necessary to aid the user in making a correct selection of a protective system from the data.

"(iii) At least one copy of the tabulated data which identifies the registered professional engineer who approved the data, shall be maintained at the jobsite during construction of the protective system. After that time the data may be stored off the jobsite, but a copy of the data shall be made available to the Secretary upon request."

29 CFR § 1926.652(b)(1) - (3) (italics in original).

Mowat requested a contested case hearing on the citation. At the hearing, Mowat conceded that it had not met the requirements of Options (1), (2), or (3) in conducting the excavation, but argued that it had met those of Option (4).

The ALJ concluded that Mowat had not met the Option (4) requirements nor those of any of the other options. However, the ALJ further concluded that, in order to sustain the citation, OR-OSHA had to prove that Mowat's violation of the rule had created an "actual or potential risk" for Mowat's employees. Because the hearing record did not contain evidence to support such a finding, the ALJ entered an order vacating the citation. OR-OSHA timely petitioned for judicial review of the ALJ's order.

On review, OR-OSHA contends that the ALJ erred in concluding that it had to prove that Mowat's violation of 29 CFR § 1926.652 had created an actual or potential hazard for Mowat's workers. In its view, all that it had to prove was that Mowat had failed to conduct the excavation in accordance with any of the options specified in the rule.

In rejecting OR-OSHA's contention about its *prima facie* burden, the ALJ relied on our decision in *Oregon Occupational Safety v. Mad Creek Logging*, 123 Or App 453, 861 P2d 365 (1993), *rev den*, 318 Or 381 (1994). The ALJ understood *Mad Creek Logging* to stand for the proposition that OR-OSHA must prove in every case that an employer's violation of a safety rule created a hazardous condition for employees, not just that the employer violated a safety rule. As we will explain, the ALJ misunderstood *Mad Creek Logging* and, hence, the law.

As noted earlier, the rule at issue is a federal rule, which is among many that OR-OSHA has adopted to promote workplace safety. *See* OAR 437-003-0001(16)(c). The federal courts have developed a body of law that has affected the adoption and interpretation of federal workplace safety rules such as 29 CFR § 1926.652. *See generally Occupational Safety and Health Law* 82 (Randy S. Rabinowitz ed., 2d ed 2002). That body of law draws a distinction between two types of rules: those that explicitly or implicitly make hazardousness an element of the rules and, hence, an element that the enforcement authority must prove as part of its *prima*

*facie* case in an enforcement proceeding, and those that do not. *See, e.g., id.; Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F2d 864, 869 (10th Cir 1975).

*Pratt & Whitney Aircraft v. Donovan*, 715 F2d 57 (2d Cir 1983), involved a rule of the first type. The employer operated a manufacturing plant that had seven metal-plating production lines that used venting ducts for each line that connected to a common duct to remove gases and chemicals from the air in the plant. The employer was cited by the Secretary of Labor for violating a federal Occupational Safety and Health Administration (OSHA) rule that prohibited the use of a common duct system " 'where either one or the combination of substances removed [by the common duct system] may constitute a fire, explosion, or chemical reaction hazard in the duct system.' " *Id.* at 59 (quoting 29 CFR § 1910.94(d)(7)(iii) (1982)).

The Second Circuit ultimately vacated the citation on the ground that the Secretary had failed to prove that the employer's use of the common duct to vent the seven production lines had, in fact, created a hazardous condition. In doing so, the court distinguished the common-duct rule from most other OSHA rules:

"Unlike most of the Secretary's safety and health standards, [the common-duct rule] does not presume the existence of a safety hazard. *See Modern Drop Forge Co. v. Secretary of Labor*, 683 F.2d 1105, 1114-15 (7th Cir. 1982). Instead, the standard proscribes common venting only in circumstances where the substances removed may alone or in combination pose a threat to employee safety. Thus, to establish a prima facie case of a violation of [the common-duct rule], the Secretary must show more than the mere use by an employer of a common exhaust system; he must show that (1) substances are or are likely to be removed which (2) either alone or in combination (3) pose a fire, explosion, or chemical reaction hazard."

*Id.* at 63-64. Because the Secretary had failed to produce sufficient evidence to support a finding that the employer's use of the common duct had created a hazard, the court vacated the citation.

*Harry C. Crooker v. Occupational Safety and Health*, 537 F3d 79 (1st Cir 2008), involved a rule of the second type, that is, one that did *not* make hazardousness an element of the rule. The rule at issue prohibited the operation of construction equipment within 10 feet of an energized, non-insulated power line. The employer was cited for violating the rule for allowing an employee to operate a backhoe within 10 feet of a power line. On judicial review of an administrative decision upholding the citation, the employer contended, *inter alia*, that the Secretary of Labor had not presented a *prima facie* case because she had not presented evidence that operation of the backhoe within 10 feet of the power line was hazardous. The First Circuit rejected the argument, explaining that a rule of the type at issue "*presumes* the existence of a safety hazard," and, therefore, " 'the Secretary need not prove that the violative conditions are actually hazardous.' " *Id.* at 85 (quoting *Modern Drop Forge*, 683 F2d at 1114) (emphasis in original).

Similarly, in *Lee Way Motor Freight*, the Tenth Circuit upheld a citation against an employer for violating a rule that required the use of guardrails or covers on open pits, tanks, vats, or similar open spaces. 511 F2d at 870. The employer challenged the citation on judicial review, arguing that the Secretary of Labor had not presented evidence that its failure to use covers or guardrails on its truck maintenance pits had, in fact, created a hazard for its employees. The court rejected that contention, agreeing with the Secretary that the rule did not require the Secretary to prove that the employer's violation of the safety standard had created a hazardous condition: "The standard presupposes the obvious, namely, that an open unguarded pit necessarily presents the hazard that someone may fall into it." *Id.* at 869.

The rule at issue here protects against cave-ins at construction sites by specifying four sloping and benching system options from which employers can choose to conduct excavations. The rule does not explicitly or implicitly make hazardousness an element of the rule. Rather, it presumes that an employer's failure to conduct an excavation in accordance with one of the four options in the rule creates a cave-in hazard for employees who could be affected by a cave-in. Hence, OR-OSHA was not required to present evidence as

part of its *prima facie* case that the excavation at the Mowat work site had, in fact, created a hazardous condition for Mowat's employees.

Our decision in *Mad Creek Logging* is not to the contrary. There, OR-OSHA and the employer agreed that OR-OSHA was required to "show that an employee was exposed to an unsafe condition as a result of a failure to comply with the [safety] standard" set by the rule at issue, which required wire rope to " 'be wound on drum spools in a manner to prevent excessive wear, kinking, chafing or fouling.' " 123 Or App at 455 (quoting rule). OR-OSHA presented evidence that the employer had improperly wound wire rope on a spool and thereby damaged the wire rope, but it did not present evidence that the damage to the wire rope had created a hazardous condition for employees. Because of the parties' agreement about what OR-OSHA had to prove to sustain its citation against the employer, we did not consider whether the rule was one that made hazardousness an element of it. In all events, *Mad Creek Logging* does not establish a principle that applies to the interpretation or enforcement of all OR-OSHA safety rules.

In summary, the ALJ found that Mowat had failed to meet the requirements of any of the options specified in 29 CFR § 1926.652(b) for conducting the excavation at its Milwaukie work site. Contrary to the ALJ's conclusion, OR-OSHA was not required to submit evidence as part of its *prima facie* case that Mowat's failure to comply with the rule had created a hazardous condition for its employees. It follows that the ALJ erred in dismissing the citation on the ground that OR-OSHA had failed to submit sufficient evidence to sustain it.

Reversed and remanded with instructions to reinstate the citation.